Judge RYAN delivered the opinion of the Court.
Contrary to his pleas, Appellant was convicted by special court-martial of one specification of failure to go to his appointed place of duty, one specification of absence without leave, one specification of making a false official statement, and one specification of wrongful use of cocaine. Articles 86, 107, 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 907, 912a (2006). He was sentenced to confinement for thirty days and a bad-conduct discharge. The convening authority approved the adjudged findings and sentence, and the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) affirmed. United States v. Sweeney, No. NMCCA 200900468, slip op. at 4 (N.-M.Ct.Crim.App. Apr. 29, 2010).
In the Blazier cases,[1] we set forth a straightforward path for analyzing the admissibility of drug testing reports under the Confrontation Clause. Prior to announcing our decision in Blazier II, we granted Appellant’s petition for review as a Blazier trailer to determine whether Appellant was denied his right of confrontation under the Sixth Amendment.[2] Applying the principles we set forth in those cases as well as prior and subsequent Supreme Court precedent to the particular facts before us, we hold that Appellant was denied his right to confront the witnesses against him, and we remand to the court below for consideration of whether the error was harmless beyond a reasonable doubt.
I. BACKGROUND
A. Facts
In February 2008, Appellant reported to the Navy Mobilization Processing Site (NMPS), Norfolk, after his unauthorized absence following his return from Iraq. NMPS policy required any member returning from an unauthorized absence of twenty-four hours or more to submit to a urinalysis. Thus, the Officer-in-Charge (OIC) ordered Appellant to provide a urine sample for testing, which Appellant did.[3]
*299 The Navy Drug Screening Laboratory (NDSL) tested Appellant’s sample. According to the Government’s expert witness, Mr. Albert Marinari, a NDSL employee, NDSL is a “forensic” laboratory whose “mission” is to “provid[e] urinalysis drug testing that is scientifically valid and forensically acceptable as evidence in courts of law,” and which employs certain procedures “to ensure that the integrity of ... the evidence has been ... preserved.”
NDSL determined that Appellant’s sample was presumptively positive for cocaine and codeine in two immunoassay screen tests conducted on March 5, 2008. Thereafter, NDSL conducted a gas chromatograph/mass spectrometry (GC/MS) confirmation test for cocaine on March 7 and another one for codeine on March 12. All testing was complete by March 12.
NDSL’s drug testing report includes chain of custody documents and machine-generated printouts of machine-generated data produced in the course of testing. It also contains “data review” sheets for each test, signed by various officials on the date of the test. The data review sheets for the cocaine and codeine GC/MS confirmation tests contain handwritten notations of the results.
In addition to these documents, the report includes a “specimen custody document” signed by laboratory official “R. Flowers” on March 13 stating that the sample arrived with the package and bottle seals intact, indicating that the sample tested positive for cocaine and codeine, and certifying (unlike a typical chain of custody document) additional substantive information: that the “laboratory results indicated on this form were correctly determined by proper laboratory procedures, and they are correctly annotated.” Finally, the report includes a cover memorandum addressed to the Region Legal Service Office (RLSO) signed by Robert Sroka by direction, certifying that the immunoassay screens and GC/MS confirmation tests detected cocaine metabolites and opiate compounds in excess of Department of Defense (DOD) cutoffs. The cover memorandum is dated September 26 — three weeks after Appellant was charged.[4]
Appellant’s special court-martial began on November 3, 2008, and ended on May 6, 2009.[5] The Government sought to pre-admit the entire drug testing report (PE 13), as well as an unsigned “report summary” (PE 17) indicating that Appellant’s sample tested positive for cocaine and codeine. Defense counsel objected to pre-admitting the documents, citing “proper foundation” and “chain of custody.” Although the military judge commented that there would be “a Crawford objection” if the Government failed to call the “critical witnesses” and “lay the foundation for the documents,” defense counsel continued to focus on “foundation” and did not argue that any of the documents were testimonial. The military judge pre-admitted the documents subject to the Government “carrying out its obligations.”
In an Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2006), session, defense counsel objected to admission of “the lab things,” specifically naming a bottle and arguing that “under Crawford the individual that actually handled the bottle and had a piece in the process needs to be here too.” When the military judge asked why the bottle was “testimonial,” defense counsel began by stating, “it’s the urinalysis in general, sir, all of the documents, sir.” The military judge then focused defense counsel’s attention on the bottle. Defense counsel argued that the individual who signed the bottle label was providing testimony that that individual handled the bottle correctly. After the military judge rejected this argument and admitted the bot- *300 tie,[6] defense counsel stated that he had no further issues he wished to raise.
During the trial, the Government did not call either Flowers or Sroka as witnesses but instead called Mr. Marinari as an expert in forensic chemistry urinalysis testing and interpretation. Although Mr. Marinari signed both the cocaine confirmation test data review sheet as the “final lab certifying official” (FLCO)[7] and one of the chain of custody documents, he did not sign either the cover memorandum or the specimen custody document. Moreover, he testified that he did not perform any of the tests and was “not present when ... any of the technicians did any of ... their work,” including the collection, shipping, packaging, inspecting, or testing of the sample. When the Government sought to have Mr. Marinari discuss the NDSL drug testing report and publish it to the members, defense counsel again objected citing the “proper foundation” and “chain of custody” of the bottle. The military judge again overruled the objection, and defense counsel agreed that there was no issue with respect to the drug testing report. The military judge permitted the report to be introduced in its entirety.
Mr. Marinari then testified as to the contents of the drug testing report. At various points in his direct examination, he testified that the report showed the presence of cocaine and codeine, at one point referencing the specimen custody document, and later referencing a machine-generated printout. Although he presented his opinions as his own, the Government introduced the entire drug testing report into evidence. On cross-examination, defense counsel sought to impeach the reliability of the tests.
B. NMCCA Decision
The NMCCA found no error in the admission of the laboratory documents.[8] Sweeney, No. NMCCA 200900468, slip op. at 3. The court relied entirely upon Magyari, which it characterized as holding that “drug laboratory documents [are] non-testimonial in nature.” Id. The court also found that, unlike the cover memorandum that this Court had by then deemed testimonial in Blazier I, “there is nothing to suggest that the lab report [here] was generated for court-martial use.” Id. at 3 n. 1. Finally, the court applied the indicia of reliability test set forth in Ohio v. Roberts, 448 U.S. 56, 65-66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and concluded that the entire report was admissible pursuant to the “firmly rooted hearsay exception” for “business recordfs].” Sweeney, No. NMCCA 200900468, slip op. at 3.
II. LAW
“In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” U.S. Const. amend. VI.[9] Accordingly, testi *301 monial hearsay may not come into evidence without cross-examination of the declarant unless (1) the declarant is unavailable, and (2) the declarant was subject to prior cross-examination on the hearsay. Blazier II, 69 M.J. at 222; see also Bullcoming v. New Mexico, — U.S. -, 131 S.Ct. 2705, 2710, 180 L.Ed.2d 610 (2011) (“The accused’s right is to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist.”); accord Cavitt, 69 M.J. at 414; United States v. Dollar, 69 M.J. 411, 412 (C.A.A.F.2011).
Although “reasonable minds may disagree about what constitutes testimonial hearsay,” Blazier II, 69 M.J. at 222, a statement is testimonial if “made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.” Blazier I, 68 M.J. at 442 (quoting Crawford, 541 U.S. at 51-52, 124 S.Ct. 1354) (quotation marks omitted). Thus, “[a] document created solely for an evidentiary purpose ... made in aid of a police investigation, ranks as testimonial.” Bullcoming, 131 S.Ct. at 2717 (quotation marks and citation omitted). We have held that testimonial statements include a formalized certification of results contained in a drug testing report requested by the prosecutor. Blazier I, 68 M.J. at 443; see also Bullcoming, 131 S.Ct. at 2717; Melendez-Diaz, 129 S.Ct. at 2532. In Blazier II, we further observed that it “is well-settled that under both the Confrontation Clause and the rules of evidence, machine-generated data and printouts are not statements and thus not hearsay — machines are not declar-ants — and such data is therefore not ‘testimonial.’” Blazier II, 69 M.J. at 224; cf. Bullcoming, 131 S.Ct. at 2714 (noting that the “representations” contained in the testimonial statement at issue were “not revealed in raw, machine-produced data”). However, admission of and expert testimony about such documents, graphs, and charts may nevertheless implicate the rules of evidence. Blazier II, 69 M.J. at 224 (“Because machine-generated printouts of machine-generated data are not hearsay, expert witnesses may rely on them, subject only to the rules of evidence generally, and M.R.E. 702 and M.R.E. 703 in particular.”).
What we have not previously decided is what precisely remains of Magyari after Melendez-Diaz, Blazier I, Blazier II, and Bull-coming. Answering that question here makes resolution of this case relatively straightforward.
III. APPLICABILITY OF MAGYARI
At the time of Appellant’s trial, the leading case applying Crawford to the admission of drug testing reports within the military justice system was Magyari because Melendez-Diaz, Bullcoming, Blazier I, and Blazier II had not yet been decided. Handicapped by the Supreme Court’s failure to give clear guidance as to how to determine whether hearsay was testimonial, see Crawford, 541 U.S. at 68, 124 S.Ct. 1354 (“We leave for another day any effort to spell out a comprehensive definition of ‘testimonial.’”), Ma-gyari held that a drug testing report was nontestimonial in toto if those conducting the tests “were not engaged in a law enforcement function, a search for evidence in anticipation of prosecution or trial” and were “merely cataloguing the results of routine tests.” Magyari, 63 M.J. at 126-27. Ma-gyari concluded that drug tests initiated by a unit sweep are nontestimonial because “[t]here [was] no indication that any of [the laboratory technicians] had reason, or were under pressure, to reach a particular conclusion about [the accused’s] sample ... or that they had reason to distinguish [the accused’s sample] from the other thousands of samples routinely screened and tested by batch at the laboratory.” Id. at 127. Conversely, drug testing reports were testimonial “where the testing [was] initiated by the prosecution to discover incriminating evidence.” Id. (emphasis added); see also Harcrow, 66 M.J. at 159 (holding that where the testing was initiated by the prosecution to discover incriminating evidence, the laboratory documents were testimonial). As a result, even after Melendez-Diaz, Blazier I, and Blazier II, the Courts of Criminal Appeals have continued to cite Magyari without further analysis *302 as the basis for finding no error in the admission of all portions of a drug test report except the cover memorandum where the impetus behind the initial urinalysis was unit inspection, rather than law enforcement.[10]
But decisions of this Court and the Supreme Court since Magyari dictate that further analysis is required. First, it is emphatically not the ease that a statement is automatically nontestimonial by virtue of it being a “routine” statement of “unambiguous factual matters.”[11] Magyari, 63 M.J. at 126 (citations omitted). Indeed, “[m]ost witnesses ... testify to their observations of factual conditions or events, e.g., ‘the light was green,’ ‘the hour was noon.’” Bullcoming, 131 S.Ct. at 2714. But this does not render such observations nontestimonial.[12] Id. at 10-11. But see Magyari, 63 M.J. at 126-27; Brief of Appellee at 20-24, United States v. Sweeney, No. 10-0461 (C.A.A.F. Nov. 23, 2010).
Second, Magyari and the dissent notwithstanding, see Sweeney, 70 M.J. at 309-10 (Baker, J., dissenting), more recent case law demonstrates that the focus has to be on the purpose of the statements in the drug testing report itself, rather than the initial purpose for the urine being collected and sent to the laboratory for testing. The relevant question is thus whether the statement is “made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.” Blazier I, 68 M.J. at 442 (quoting Crawford, 541 U.S. at 51-52, 124 S.Ct. 1354) (quotation marks omitted). Asked another way, would it be reasonably foreseeable to an objective person that the purpose of any individual statement in a drug testing report is evidentiary? See Blazier I, 68 M.J. at 442 (noting that “fine distinctions based on the impetus behind the testing and the knowledge of those conducting laboratory tests” are “relevant” but not dispositive in determining whether the purpose of a “statement” is evidentiary).
Although those performing initial drug tests may well be “independent scientist[s]” carrying out “non-adversarial public dut[ies],” that does not mean that their statements are not produced to serve as evidence. See Bullcoming, 131 S.Ct. at 2717 (quotation marks and citation omitted); Melendez-Diaz, 129 S.Ct. at 2536-37. Where, as here, an accused’s sample tests positive in at least one screening test, analysts must reasonably understand themselves to be assisting in the production of evidence when they perform re-screens and confirmation tests and subse *303 quently make formal certifications[13] on official forms attesting to the presence of illegal substances, to the proper conducting of the tests, and to other relevant information.[14] This is all the more evident where, as here, the Government expert testifies that the forensic laboratory’s “mission” is to “provid[e] urinalysis drug testing that is scientifically valid and forensieally acceptable as evidence in courts of law.”[15]
In short, recent case law from this Court and the Supreme Court requires an examination of individual statements that goes beyond Magyari. We now turn to that examination.
IV. PLAIN ERROR
In light of the above, and for the reasons set forth below, we hold that Appellant’s failure to object to the admission of the NDSL drug testing report on Confrontation Clause grounds was forfeited rather than waived in light of Magyari. In addition, we hold that testimonial hearsay was erroneously admitted; that the testimony of Mr. Marinari (who was not the declarant of the testimonial hearsay) did not satisfy the Confrontation Clause; and that these errors were plain and obvious. We remand to the Navy-Marine Corps Court of Criminal Appeals to determine whether these plain and obvious errors were harmless beyond a reasonable doubt.
A. Waiver/Forfeiture[16]
“Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the ‘intentional relinquishment or abandonment of a known right.’” United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)); see also Harcrow, 66 M.J. at 156. “[T]here is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was an intentional relinquishment of a known right or *304 privilege.” Harcrow, 66 M.J. at 157 (quotation marks and citation omitted). To determine whether a failure to object was waiver or mere forfeiture, we look to the state of the law at the time of trial, and we will not find waiver where subsequent case law “opened the door for a colorable assertion of the right to confrontation where it was not previously available.” Id. at 157-58.
At the time of Appellant’s trial, he had no “colorable objection” and therefore did not voluntarily relinquish a “known” right of confrontation. Because Appellant’s urinalysis, like the urinalysis testing in Magyari, was not initiated at the outset by law enforcement, any objection by Appellant would have been overruled under Magyari — as evidenced by the continued use of Magyari in the Courts of Criminal Appeals as the basis for finding no error in the admission of such tests, even in the aftermath of Melendez-Diaz, Blazier I, and Blazier II. See supra note 10. And, tellingly, the CCAs have relied on Magyari as the basis for reversing trial court judges who refused to admit drug testing reports without the testimony of the declarants of testimonial hearsay. See, e.g., Skrede, 2009 WL 4250031, at *2-*3, 2009 CCA LEXIS 443, at *6. Failing to make what would have been a meritless objection under Magyari’s interpretation of Crawford cannot possibly signal either a strategic trial decision or a voluntary relinquishment of a “known” right, see Harcrow, 66 M.J. at 158, in the context of the military justice system. We therefore review for plain error.
B. Plain Error
Under plain error review, this Court will grant relief only where (1) there was error, (2) the error was plain and obvious, and (3) the error materially prejudiced a substantial right of the accused. Id. Where, as here, the alleged error is constitutional, the prejudice prong is fulfilled where the Government cannot show that the error was harmless beyond a reasonable doubt. Id. at 160.
We find plain and obvious error in the admission of two statements from the NDSL report. First, it was plain and obvious error to admit the cover memorandum results certification. The laboratory made the memorandum after Appellant had been charged, addressed it to the RLSO, and included the formulaic language for authenticating a business record — language one would expect to find only on a document made for an evidentiary purpose. In all material respects, this formal, affidavit-like certification of results resembles those we found testimonial in Blazier I, and the de-clarant, Robert Sroka, was not subject to cross-examination. See Bullcoming, 131 S.Ct. at 2715-17 (finding error in admitting a formalized certification of results through a surrogate witness without confrontation of the declarant); Blazier II, 69 M.J. at 223-24 (finding error in admitting the Blazier I cover memoranda through a surrogate witness and without confrontation of the declarant).
Second, it was also plain and obvious error to admit the specimen custody document certification. This certification is a formal, affidavit-like statement of evidence that not only presented the machine-generated results, but also indicated “that the laboratory results ... were correctly determined by proper laboratory procedures, and that they are correctly annotated.” See Bullcoming, 131 S.Ct. at 2715 (holding that the out-of-court declarant “certified to more than a machine-generated number” when the statements included affirmations regarding accuracy and compliance with laboratory protocol). Such a formal certification has no purpose but to function as an affidavit. Because the declarant, “R. Flowers,” was not subject to cross-examination, admission of the specimen custody document plainly and obviously violated the Confrontation Clause. Furthermore, this violation was compounded when Mr. Marinari testified that the specimen custody document showed the presence of cocaine and codeine. See Blazier II, 69 M.J. at 226 (finding a violation of the Confrontation Clause where an expert witness repeated the substance of testimonial hearsay).[17]
*305 In finding that no testimonial hearsay was admitted, the NMCCA made several errors. First, the court cited Magyari for the proposition that all drug testing reports are non-testimonial. Sweeney, No. NMCCA 200900468, slip op. at 3. Second, in considering the admissibility of the drug testing report, the court overlooked the fact that while no request specified that the cover memorandum be made “for court-martial use,” the memorandum was requested by the RLSO after testing was complete, thus rendering the purpose for the memorandum facially evidentiary. See id. at 3 n. 1. Third, it considered the drug testing report in toto without examining the admissibility of particular statements within the report. Finally, the court’s reliance on Roberts and “firmly rooted hearsay exception[s]” to assess the admissibility of the report in light of the requirements of the Confrontation Clause is obsolete. Cavitt, 69 M.J. at 414. Once these errors are corrected, it is plain and obvious that the cover memorandum and specimen custody document are testimonial.
However, we do not find that the stamps, signatures, and other notations on the chain of custody documents and data review sheets, or the results report summary are “plainly and obviously” testimonial in the context of review for plain error. Although we are concerned in particular about the admission of the cocaine confirm data review sheet and results report summary — both of which summarize test results — these documents are not “plainly and obviously” testimonial as they are neither formalized, affidavit-like statements, see, e.g., Bullcoming, 131 S.Ct. at 2717; Melendez-Diaz, 129 S.Ct. at 2532; Blazier I, 68 M.J. at 443, nor statements made in a formal setting, see, e.g., Hammon v. Indiana, 547 U.S. 813, 830, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (holding that statements made during a police interrogation which took place in a formal setting rendered the statements “inherently testimonial”).[18] Moreover, assuming arguendo these two documents were testimonial, the error still would not be “plain and obvious”: one of the declarants of the data review sheet was Mr. Marinari himself, who testified. And because the results report summary does not name a declarant and was not discussed at trial, it is by no means plain and obvious that its declarant did not testify.
An objection at trial, followed by more extensive development of the evidence and argument on its nature, might tip the balance the other way in an appropriate case. On this point, we agree with the dissent that *306 “there is yet room for litigation over the underlying nature of military urinalysis documents.” Sweeney, 70 M.J. at 311 (Baker, J., dissenting). Here, however, there was no objection, and the admission of the chain of custody documents, data review sheets, and results report summary did not constitute plain error.
C. Prejudice
We grant relief for Confrontation Clause errors only where they are not harmless beyond a reasonable doubt. Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Among other factors, we consider the importance of the unconfronted testimony in the prosecution’s case, whether that testimony was cumulative, the existence of corroborating evidence, the extent of confrontation permitted, and the strength of the prosecution’s case. Id.
We explained the harmless error inquiry in the context of the erroneous admission of testimonial hearsay in Blazier II:
[The expert witness] could have arrived at an expert opinion based on training, education, experience and admissible evidence alone, and considered, but not repeated, inadmissible evidence in arriving at an independent expert opinion. Such expert opinion and admissible evidence together could have been legally sufficient to establish the presence of drug metabolite in the urine tested. See United States v. Barrow, 45 M.J. 478, 479 (C.A.A.F.1997). But in assessing harmlessness in the constitutional context, the question is not whether the evidence was legally sufficient to uphold a conviction without the erroneously admitted evidence. See Fahy v. Connecticut, 375 U.S. 85, 86, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). Rather, “ ‘[t]he question is whether there is a reasonable probability that the evidence complained of might have contributed the conviction.’” Chapman [v. California], 386 U.S. [18], 23, 87 S.Ct. 824 [17 L.Ed.2d 705 (1967) ] (quoting Fahy, 375 U.S. at 86-87, 84 S.Ct. 229). This determination is made on the basis of the entire record, and its resolution will vary depending on the facts and particulars of the individual ease.
Blazier II, 69 M.J. at 226-27. Here, as in Blazier II, the expert witness’s independent opinion combined with the admissible machine-generated printouts could have provided legally sufficient evidence to convict Appellant under Barrow and Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). However, we remand to the Court of Criminal Appeals to determine the altogether different question whether the inadmissible succinct summaries and expert’s repetition of inadmissible hearsay were harmless beyond a reasonable doubt.
V. CONCLUSION
Because the cover memorandum and specimen custody document contained in the NDSL report were plainly and obviously testimonial, the decision below is reversed, and the case is remanded to the United States Navy-Marine Corps Court of Criminal Appeals for consideration of whether the erroneous admission of testimonial hearsay was harmless beyond a reasonable doubt.

. United States v. Blazier (Blazier II), 69 M.J. 218, 222 (C.A.A.F.2010); United States v. Blazier (Blazier I), 68 M.J. 439 (C.A.A.F.2010).

. On September 10, 2010, we granted the petition for review on two issues:
I. WHETHER, IN LIGHT OF THE UNITED STATES SUPREME COURT’S RULING IN MELENDEZ-DIAZ v. MASSACHUSETTS, 557 U.S. 305, 129 S.Ct. 2527 [174 L.Ed.2d 314] (2009), THE ADMISSION INTO EVIDENCE OF THE NAVY DRUG SCREENING LABORATORY URINALYSIS DOCUMENTS VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONT THE WITNESSES AGAINST HIM.
II. WHETHER TRIAL DEFENSE COUNSEL’S OBJECTION TO THE DRUG LABORATORY REPORT CONSTITUTED A VALID CRAWFORD OBJECTION. IF NOT, THEN WHETHER TRIAL DEFENSE COUNSEL WAIVED OR FORFEITED THE CONFRONTATION CLAUSE ISSUE, AND, IF FORFEITED, WHETHER ADMISSION OF THE REPORT CONSTITUTED PLAIN ERROR.
On February 23, 2011, we specified an additional issue:
WHETHER THE COURT OF CRIMINAL APPEALS ERRED AS A MATTER OF LAW IN DECLINING TO APPLY MELENDEZ-DIAZ v. MASSACHUSETTS, [557 U.S. 305] 129 S.Ct. 2527 [174 L.Ed.2d 314] (2009), IN ASSERTING THAT UNITED STATES v. MAGYARI, 63 M.J. 123 (C.A.A.F.2006), "FOUND DRUG LABORATORY REPORTS TO BE NON-TESTIMONIAL IN NATURE,” AND IN HOLDING (1) THAT DRUG LABORATORY DOCUMENTS WERE NONTESTIMONIAL IN NATURE, (2) THAT THE LAB REPORT WAS A RECORD OF A REGULARLY CONDUCTED ACTIVITY OF THE NAVY DRUG SCREENING LABORATORY THAT QUALIFIED AS A BUSINESS RECORD AND FIRMLY ROOTED HEARSAY EXCEPTION UNDER M.R.E. 803(6), AND (3) THAT THERE WAS NOTHING TO SUGGEST THAT THE LAB REPORT WAS GENERATED FOR COURT-MARTIAL USE. SEE UNITED STATES v. BLAZIER, 69 M.J. 218 (C.A.A.F.2010); UNITED STATES v. BLAZIER, 68 M.J. 439 (C.A.A.F.2010); AND UNITED STATES v. HARCROW, 66 M.J. 154 (C.A.A.F.2008).

.Although the drug testing report’s specimen custody document indicates that the sample was submitted voluntarily, the military judge found, based on the OIC’s testimony, that Appellant submitted the sample pursuant to the OIC's order. The military judge made this finding in the course of ruling on Appellant's motion in limine to suppress the urinalysis results as the fruit of an unlawful search not justified by Military Rule of Evidence (M.R.E.) 313. The military judge *299 denied that motion. Appellant has not appealed that ruling, and the issue is not before this Court.

. Although Appellant initially was charged with wrongful use of both cocaine and codeine, the specification relating to codeine was subsequently dismissed. This appeal concerns only the specification charging wrongful use of cocaine.

. The Supreme Court would not decide Melendez-Diaz until more than a month later, on June 25, 2009. And this Court would not decide the Blazier cases until 2010. At the time of trial, the Supreme Court had decided Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and this Court had decided Magyari and Harcrow.

. Appellant has not appealed this ruling and does not argue that this colloquy constituted a Crawford objection to the drug testing report or report summary.

. According to Mr. Marinari, his role as FLCO did not involve participation in or observation of the testing, but simply involved certifying the results of the GC/MS cocaine test after reviewing "all the chain of custody documents, and all the test data” and determining that the test "met all requirements established by DOD.”

. Despite finding that Appellant "waive[d]" his objection to the laboratory documents, Sweeney, No. NMCCA 200900468, slip op. at 3 (citing Rule for Courts-Martial (R.C.M.) 905(e), Manual for Courts-Martial, United States (2008 ed.) (MCM)), the court nonetheless analyzed whether the admission of those documents was erroneous and did not apply the plain error test.

.The "text of the Sixth Amendment” does not contain exceptions for the military. But see United States v. Sweeney, 70 M.J. 296, 307 (C.A.A.F.2011) (Baker, J., dissenting). And our case law has more than once applied the Confrontation Clause to documents generated in the military urinalysis program. See United States v. Cavitt, 69 M.J. 413, 413 (C.A.A.F.2011); Blazier II, 69 M.J. at 222. This case does not involve a statute, presidential rule, or judicial decision purporting to diminish the protections afforded by the Confrontation Clause in the military urinalysis context; nor has the Government attempted to demonstrate a military exigency requiring diminished protection. See, e.g., United States v. Jacoby, 11 C.M.A. 428, 433, 29 C.M.R. 244, 249 (1960). Accordingly, we have no cause in this case to depart from Blazier II, in which we applied the Confrontation Clause according to the usual principles established by Supreme Court precedent.

. See, e.g., United States v. Lusk, No. ACM S31624, 2010 CCA LEXIS 367, at *7-*8, 2010 WL 4068922, at *3 (A.F.Ct.Crim.App. Oct. 14, 2010); United States v. Dunn, No. ACM S31584, 2010 CCA LEXIS 169, at *27, 2010 WL 3981682, at *9 (A.F.Ct.Crim.App. Aug. 31, 2010); United States v. Weeks, No. ACM S31625, 2010 CCA LEXIS 193, at *6-*7, 2010 WL 4069035, at *3 (A.F.Ct.Crim.App. July 26, 2010); United States v. Burton, No. ACM S31632, slip. op. at 4 (A.F.Ct.Crim.App. June 18, 2010); United States v. Stewart, No. ACM S31685, 2010 CCA LEXIS 255, at *8-*9, 2010 WL 4068947, at *3 (A.F.Ct.Crim.App. June 8, 2010); United States v. Nutt, No. ACM S31600, 2010 CCA LEXIS 198, at *11, 2010 WL 2265272, at *4 (A.F.Ct.Crim.App. May 6, 2010); United States v. Robinson, No. NMCCA 200800827, 2010 CCA LEXIS 8, at *10-*12, 2010 WL 317686, at *4 (N-M.Ct.Crim.App. Jan. 28, 2010); United States v. Skrede, No. 2009-09, 2009 WL 4250031, at *2-*3, 2009 CCA LEXIS 443, at *6 (A.F.Ct.Crim.App. Nov. 23, 2009).

. Magyari’s reasoning to the contrary relied, like the Supreme Judicial Court of Massachusetts in Melendez-Diaz, upon Commonwealth v. Verde, 444 Mass. 279, 827 N.E.2d 701 (2005). The Supreme Court has specifically rejected Verde's reasoning. See Melendez-Diaz, 129 S.Ct. at 2532.

.That a statement is "routine” is relevant only to whether that statement is made in the "ordinary course of business” — which of course does not determine whether the statement is testimonial. Blazier II, 69 M.J. at 226 n. 8 (citing Melendez-Diaz, 129 S.Ct. at 2538-40). Moreover, that “factual matters" may be "unambiguous” means only that a declarant need not be competent to perceive them; it does not mean the declarant was honest in reporting them — an equal concern of the Confrontation Clause. See Bullcoming, 131 S.Ct. at 2715 (noting that the purpose of cross-examining the declarant is to probe "incompetence, evasiveness, or dishonesty ”) (emphasis added); Melendez-Diaz, 129 S.Ct. at 2537 (noting that the purpose of confrontation is to probe the witness’s competence and honesty).

. As reflected in Bullcoming, the formality of a document generated by a forensic laboratory is a factor to be considered when determining whether a document is testimonial. See Bullcoming, 131 S.Ct. at 2717 (holding that "the formalities attending the 'report of blood alcohol analysis’ are more than adequate to qualify [the witness’s] assertions as testimonial"); see also Melendez-Diaz, 129 S.Ct. at 2543 (Thomas, J., concurring) ("I continue to adhere to my position that 'the Confrontation Clause is implicated by extrajudicial statements only insofar as they are contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.' ” (quoting White v. Illinois, 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (Thomas, J., concurring in part and concurring in the judgment))).

. Here, for example, the initial screen and re-screen tests were conducted on March 5, prompting a confirmation test for cocaine on March 7. Both the cover memorandum and specimen custody document were completed and signed after all testing was completed.

. The fact that a commander, as a matter of command prerogative, may forgo court-martial proceedings against an alleged wrongdoer and instead impose nonjudicial punishment, see, e.g., Article 15(b), UCMJ, 10 U.S.C. § 815(b) (2006) (granting the commanding officer the discretion to "impose one or more ... disciplinary punishments for minor offenses without the intervention of a court-martial”), cannot change the reality that the document was, on its face, created to serve as evidence. A different case might arise if the prosecution offers evidence at trial that raises an issue as to whether a particular document was not created to serve as evidence. Given the posture of this case, where the defense did not object to the admission of the documents on Confrontation Clause grounds, no such issue was raised or developed in this case.

.On appeal, Appellant challenges the testimony of Mr. Marinari and the admission of the drug testing report and results report summary as violating his right of confrontation. Brief of Appellant at 9, United States v. Sweeney, No. 10-0461 (C.A.A.F. Oct. 8, 2010). To challenge evidence, an accused must “stat[e] the specific ground of objection, if the specific ground was not apparent from the context.” M.R.E. 103(a)(1). At trial, Appellant did not object to the documents on Confrontation Clause grounds. Instead, as described above, all of Appellant's objections were either that the documents lacked proper "foundation” or that a laboratory bottle not at issue here was testimonial. None of these objections was to the laboratory documents on Confrontation Clause grounds. See United States v. Mashek, 606 F.3d 922, 929-30 (8th Cir.2010) (applying plain error review where the accused had not raised a Confrontation Clause objection although the judge had admitted evidence subject to the prosecution establishing proper foundation).

. Contrary to the dissent, this case does not involve any of the circumstances Justice Sotoma- *305 yor mentioned in Bullcoming. First, “this is not a case in which the State suggested an alternate purpose, much less an alternate primary purpose, for the [specimen custody document].” See Bullcoming, 131 S.Ct. at 2722 (Sotomayor, J., concurring in part) (emphasis in original). Although military readiness may be an "alternate purpose" of the testing, Mr. Marinari’s testimony makes clear that the formal, affidavit-like certification on the specimen custody document itself was made for an evidentiary purpose and not, as the dissent claims, to "assure[] commanders as well as members of the Armed Forces — including those who have not engaged in unlawful conduct — that the program is being administered as intended” or to "assure[] commanders that they have an accurate understanding of the degree, if any, of controlled substance use (authorized and unauthorized) in their unit.” Sweeney, 70 M.J. at 310 (Baker, J., dissenting). As noted supra note 15, it could be a different case had the Government presented any evidence of an alternate purpose of the documents at issue. Second, as described supra, Mr. Marinari testified that he was not present for any stage of the testing; he is therefore not "a supervisor who observed an analyst conducting a test [and who] testified about the results or a report about such results.” See Bullcoming, 131 S.Ct. at 2722 (Sotomayor, J., concurring in part). Third, "this is not a case in which an expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence.” See id. (Sotomayor, J., concurring in part). The specimen custody document was admitted into evidence. Finally, as the dissent acknowledges, "this is not a case in which the [Government] introduced only machine-generated results, such as a printout from a gas chroma-tograph.” See id. (Sotomayor, J., concurring in part). Bullcoming commands our decision in this case; it does not undermine it.

. While formality may not be the exclusive means of deciding whether a statement is testimonial, but see Michigan v. Bryant, - U.S. -, 131 S.Ct. 1143, 1167, 179 L.Ed.2d 93 (2011) (Thomas, J., concurring), the informal stamps, signatures, notations, and numbers are not so clearly testimonial as to meet the heightened “plain and obvious” standard applied on plain error review.