# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.R. MCFARLANE, G.G. GERDING**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

v.

**MATTHEW D. ELLERBEE**
**MASTER-AT-ARMS SEAMAN (E-3), U.S. NAVY**

**NMCCA 201300109**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 13 December 2012.
**Military Judge:** CDR L.T. Booker, Jr., JAGC, USN.
**Convening Authority:** Commander, Navy Region Northwest, Silverdale, Washington.
**Staff Judge Advocate's Recommendation:** CDR D.E. Rieke, JAGC, USN.
**For Appellant:** Capt David A. Peters, USMC.
**For Appellee:** Maj Crista D. Kraics, USMC.                    ,

**31 July 2014**

```
-------------------------------------------------------
             OPINION OF THE COURT
-------------------------------------------------------
```

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

MITCHELL, Chief Judge:

A military judge sitting as a general court-martial convicted the appellant, contrary to his pleas, of one specification of aggravated sexual assault upon a substantially incapacitated victim in violation of Article 120(c), Uniform Code of Military Justice, 10 U.S.C. § 920(c). The appellant was sentenced to confinement for 54 months, reduction to pay-grade

E-1, and a bad-conduct discharge.  The convening authority approved the adjudged sentence and ordered it executed.[1]

The appellant now alleges three assignments of error: (1) that he was denied due process of the law due to the military judge's misunderstanding of the definition of substantial incapacitation; (2) that Article 120(c) is unconstitutionally vague as applied to the appellant; and (3) that the evidence presented at trial was neither factually nor legally sufficient to support the conviction for a violation of Article 120(c), UCMJ.

After careful examination of the record of trial and the pleadings of the parties, we are satisfied that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant occurred.  Arts. 59(a) and 66(c), UCMJ.

## Factual Summary

On 17 March 2012, the appellant, Personnel Specialist Second Class (PS2) KC, and some other Sailors attended a farewell party at a tavern in Everett, Washington.  PS2 KC and the appellant were close friends outside of work and her then boyfriend, Master-at-Arms Second Class (MA2) S[2], and the appellant were best friends.  At the tavern, PS2 KC had dinner and later that evening, starting at around 2100, began to consume alcohol.  By the time PS2 KC left the tavern with the appellant and a group of friends around 2300 she had consumed two mixed drinks and a shot of liquor.

During the course of the rest of the night and early into the next morning, the appellant, PS2 KC, and three other Sailors went to two other bars and continued to consume alcohol.  During the course of the outing, which ended at 0200 on 18 March, PS2 KC consumed approximately five mixed drinks and two shots of liquor.

MA2 B drove PS2 KC to her apartment that she shared with her boyfriend.  The appellant got out of the car and assisted PS2 KC in walking to her apartment.  MA2 S was in the apartment

---

[1] That portion of the convening authority's action which purports to execute the bad-conduct discharge is a nullity. *United States v. Bailey*, 68 M.J. 409 (C.A.A.F. 2009).

[2] At the time of trial, MA2 S was married to PS2 KC.

and awoke to the noise of appellant and PS2 KC coming up the stairs. He saw the appellant supporting PS2 KC's entire body weight as they made their way up the stairs. The appellant then assisted MA2 S in putting PS2 KC into the bathroom by the toilet; shortly afterwards they found her falling asleep on the bathroom floor. MA2 S, with the assistance of the appellant, put PS2 KC into bed. MA2 S then put a trashcan by the side of the bed, along with water and tissues in case she got sick. MA2 S had to leave the apartment to go to work at around 0400 and the appellant offered to stay with PS2 KC in case she got sick and had to go to the hospital. The appellant disclosed to MA2 S that PS2 KC had already been sick earlier that evening. MA2 S then gave the appellant shorts to sleep in and set up the couch so that he could sleep there.

PS2 KC remembered being at the bar and being curled up on the bathroom floor. The next thing she remembers is being in a "dreamlike" state, being "flipped over," and then being "touched around [her] vagina area." Record at 413. Although PS2 KC testified she did not feel penile penetration, she could not be sure whether or not she was penetrated. *Id*. at 414-15. It was not until between 0400 and 0500 on 18 March 2012 that she was awakened by the pain of her underwear being pulled up too high. *Id*. at 416. At this point she "slowly started coming to" and realized that she had been sexually assaulted by the appellant. *Id.* at 417. She immediately began to search for her cell phone. During this time the appellant was still in the apartment with her and eventually gave her his phone so she could make a call. PS2 KC called MA2 B and told him he needed to come over. MA2 B talked to PS2 KC and then asked to speak to the appellant who told him that PS2 KC was just drunk and that he was "taking care of [her]." *Id*. at 420. After the phone call, PS2 KC asked appellant to leave the room and it was at this point that she located her phone and told MA2 B via text message that the appellant had sexually assaulted her. *Id*. at 421; Prosecution Exhibit 2.

After receiving the text from PS2 KC, MA2 B left his barracks and went to her apartment. PS2 KC was taken to the Providence Regional Medical Center in Everett, Washington, to undergo a sexual assault forensics examination (SAFE). In addition to the SAFE, her blood was drawn at 0741 on 18 March 2012 and testing reflected a blood alcohol content (BAC) of .143.

Additional pertinent facts are provided as necessary to discuss the appellant's assignments of error.

**Due Process of Law**

In his first assignment of error, the appellant avers that he was denied due process of law because the military judge did not understand the definition of "substantially incapacitated" and did not clearly articulate what definition he used in deciding the appellant's case.

After being informed of his forum selection rights, the appellant initially elected to be tried by officer members. Following *voir dire* of the potential panel members, the defense asked the military judge to strike the entire panel for cause because they had all received Sexual Assault Prevention and Response Leadership training mandated by the Chief of Naval Operations. Record at 357. The military judge denied this motion, but indicated that he would entertain any challenge for cause the defense may have against individual potential members. *Id*. at 358-59. The appellant, through counsel, then asked the military judge to change his forum selection to military judge alone. After ensuring that the appellant understood the ramifications of his request, the military judge granted it.

During *voir dire* of the military judge, the trial counsel questioned him as to what the Government would have to show to prove that a person was substantially incapacitated beyond a reasonable doubt:

> TC: Do you believe that for someone to be substan- or for a person to be substantially incapacitated, as defined by Article 120 pre-June 2012, that they have to be in a medical coma?
>
> MJ: (Laughing) I don't believe I've read any cases that say that substantially incapacitated is so rigidly defined, and when I instruct myself, I will certainly not instruct myself to that extent.
>
> TC: Do you think it's possible for the government to prove substantial incapacity beyond a reasonable doubt at an Article 120 trial?
>
> MJ: Yes.

*Id*. at 370.

The Government subsequently challenged the military judge for cause averring that he "demonstrated [an] inflexible

4

judicial temperament to the statute that is charged in this case." *Id*. at 371. In response to trial counsel's challenge of the military judge, trial defense counsel stated:

> I think the court has demonstrated impartiality and an ability to make reasoned, impartial decision, and I – – I don't believe the court, has made any statement today on the record, either to the panel or in the absence of the panel in Article 39(a) or 802 that would lead an appellate court to conclude that Your Honor has an inflexible predisposition with regards to Article 120.

*Id.* at 373.

The military judge denied the government's motion to remove himself as military judge and commented:

> All that's my way of saying that I come into this case as a blank slate . . . . And with respect to the other challenges, I will interpret the statute to the best of my ability. I do not have any preconceived notions on what any of those terms mean. I invite parties to argue what the terms mean, and inform me what the terms mean when I get to the point of my receiving argument.

*Id*. at 377. [3]

After receiving evidence from both sides and before hearing closing arguments, the military judge invited the trial counsel and the defense team to elaborate on their understanding of the definition of the "substantially incapacitated" element:

---

[3] The military judge had previously commented on the current state of Article 120, UCMJ: "I think it is fair comment on the statute itself because reported decisions of the United States Court of Criminal Appeals for the Armed Forces have said so, perhaps not in so many words, but certainly they have noted the confusing entanglement of statutory definitions and elements, and perhaps burdens unconstitutionally placed on the defense in the prosecution of Article 120 cases . . . . [T]he revisions to Article 120 were reasonably swift, they were reasonably comprehensive; Article 120 has now been split into three or four different statutes in addition to the subsections of the new - new Article 120, which may reflect some of the difficulties that the trial and appellate courts, and the practitioners in the trial and appellate courts had in defining the intent of congress, the meaning of the statutes. I think, therefore, there is a fair comment that the statutory definitions are somewhat confusing and are still somewhat at issue . . . ." Record at 374-75.

It would be particularly helpful for me and this is why we're making it a little bit longer break, if you all could educate me as to what "substantially incapacitated" means. Does it mean substantially like on the way to being incapacitated? For example, you say that you were in substantial compliance with a regulation, that means that you're pretty much in compliance or does it mean, incapacitated to a pretty large degree? That is one issue that I think we need to have argument on during your closings. But feel free to craft your closing as best it fits your view of the evidence . . . .

Record at 857-58.

The appellant now avers that the above statement demonstrates that the military judge did not understand the definition of "substantially incapacitated." The appellant also contends that since the military judge did not specifically articulate on the record what definition he chose to apply when he reached his verdict, this court cannot "be certain, beyond a reasonable doubt, that the military judge applied an appropriate legal standard in determining substantial incapacity." Appellant's Brief of 1 Aug 2013 at 23-24. We disagree with both contentions.

Military judges are presumed to know the law and follow it absent clear evidence to the contrary. *United States v. Erikson*, 65 M.J. 221, 225 (C.A.A.F. 2007). An appellant carries the burden to produce evidence rebutting the presumption that the military judge properly applied the law. *Id.*

After hearing all the evidence and arguments presented by both sides, the military judge found the appellant guilty of the sexual assault as alleged in the specification. The military judge entered special findings on the record to address the issue of substantial incapacitation as applied to the sole specification in which he found the appellant guilty:

I am satisfied beyond a reasonable doubt that Petty Officer [KC] was substantially incapacitated at the time of the sexual act. The observations by those who know her well – Petty Officer [S], Petty Officer [B] – and the technical evidence have convinced me that Petty Officer [KC] was incapacitated, that is, unable to exercise control over her physical and mental

6

faculties, and that this incapacitation was to a substantial, perhaps even severe, degree.

Record 899.

We disagree with the appellant's assertions that the military judge's invitation to counsel for each side to "educate" him on the definition of substantial incapacitation was an indication that he did not know the law. Quite to the contrary, after finding the appellant guilty of sexual assault, the military judge articulated on the record what he considered in finding the appellant guilty, specifically addressing the element of substantial incapacitation. We find no evidence in the record to suggest that the military judge did not understand or apply the correct rule of law. We therefore find that the appellant has not met his burden to produce evidence rebutting the presumption that the military judge did not properly apply the law. *Erickson*, 65 M.J. at 225. Accordingly, we find this assignment of error to be without merit.

## Constitutional Challenge to Article 120(c) as Applied

In his second assignment of error, the appellant contends that the element of "substantial incapacitation" is unconstitutionally vague as applied to him. He further contends that the statute, Article 120(c), offends the appellant's Fifth Amendment rights.

A basic principle of due process requires "fair notice" that an act is subject to criminal sanction and the standard that is applicable to the forbidden conduct. *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003). A law is "void for vagueness" if "'one could not reasonably understand that his contemplated conduct is proscribed.'" *Id.* (quoting *Parker v. Levy*, 417 U.S. 733, 757 (1974)). The sufficiency of statutory notice is determined in the light of the conduct with which a defendant is charged. *Levy*, 417 U.S. at 757. "Criminal statutes are presumed constitutionally valid, and the party attacking the constitutionality of a statute has the burden of proving otherwise." *United States v. Mansfield*, 33 M.J. 972, 989 (A.F.C.M.R. 1991) (citation omitted).

We review whether a statute is unconstitutional as applied *de novo*. *United States v. Ali*, 71 M.J. 256, 265 (C.A.A.F. 2012). At trial, the appellant did not object to the

7

constitutionality of Article 120(c), as applied to his case.[4] Since the error the appellant is alleging is constitutional, and in light of the Court of Appeals for the Armed Forces (CAAF) presumption against waiver of constitutional rights and the requirement that waiver "'clearly establish . . . an intentional relinquishment of a known right or privilege,'" we consider the alleged error forfeited and not waived. *United States v. Sweeney*, 70 M.J. 296, 303-04 (C.A.A.F. 2011) (quoting *United States v. Harcrow*, 66 M.J. 154, 157 (C.A.A.F. 2008)). We therefore test for plain error. *Id.* at 304

Under plain error review, we will grant relief only where (1) there was error, (2) the error was plain and obvious, and (3) the error materially prejudiced a substantial right of the accused. *Sweeney,* 70 M.J. at 304. To determine if "a statute is 'unconstitutional as applied,'" we conduct a fact-specific inquiry." *Id.*

The appellant was charged with violating Article 120, UCMJ, specifically alleging he had sexual intercourse with PS2 KC, who was substantially incapacitated. Aggravated sexual assault, under Article 120(c), is committed when a person "engages in a sexual act with another person of any age if that other person is substantially incapacitated or substantially incapable of (A) appraising the nature of the sexual act; (B) declining participation in the sexual act; or, (C) communicating unwillingness to engage in the sexual act." The appellant now alleges that Article 120(c) is unconstitutionally vague as applied because, as articulated by the military judge, "substantial incapacity" has no discernable legal standard or definition. Appellant's Brief at 27-28. The appellant additionally argues that since the military judge indicated that the statute was confusing, it is unreasonable to expect an individual of ordinary intelligence, such as the appellant, to have sufficient notice of the statute's prohibitions. Appellant's Brief at 31. We disagree.

In a case where an individual is clearly put on notice of the illegality of his actions, he is not permitted to attack the statute for vagueness merely because the language of the statute

---

[4] The appellant argues that, although not specifically articulated as a constitutional challenge, trial defense counsel did argue that the statute, as written, was too vague to form the basis for criminal liability. Record at 873, 884, *see also* Appellate Exhibit XXV. We do not find that the trial defense counsel's comments on the record (Record at 873, 884) and response to the military judge's proposed instructions (AE XXV) rose to the level of an as-applied constitutional objection on the record.

may "not give similar fair warning with respect to other conduct which might be within its broad and literal ambit." *Levy*, 417 U.S. at 756. Simply put, "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Id.*

On the facts of this case, the appellant had ample notice of the incapacitation of PS2 KC and therefore the illegality of his conduct. PS2 KC was unable to carry herself up the stairs - the appellant had to support her entire body weight to assist her up the stairs. The appellant had to aid MA2 S in putting PS2 KC into the bathroom and later into bed. Moreover, the appellant offered to stay with PS2 KC in case she again became sick or needed medical attention. Whatever vagueness may exist in the reach of the legal definition of substantial incapacitation, it is clear that PS2 KC was well within its defined meaning. We find that the appellant had adequate notice that Article 120(c) applied to his conduct with PS2 KC. Accordingly, we conclude that this assignment of error is without merit.

### Legal and Factual Sufficiency

Finally, the appellant alleges that the facts presented in this case are legally and factually insufficient to sustain appellant's conviction for violating Article 120(c).

The test for legal sufficiency is whether, considering the evidence in the light most favorable to the Government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *United States v. Reed*, 51 M.J. 559, 561-62 (N.M.Ct.Crim.App. 1999), *aff'd*, 54 M.J. 37 (C.A.A.F. 2000); *see also* Art. 66(c), UCMJ. The test for factual sufficiency is whether, after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses, this court is convinced of the appellant's guilty beyond a reasonable doubt. *Turner*, 25 M.J. at 325; *see also* Art. 66(c), UCMJ.

There are two elements to the offense of aggravated sexual assault that the Government was required to prove beyond a reasonable doubt: (1) that the accused engaged in a sexual act with PS2 KC; and (2) that PS2 KC was substantially incapacitated. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Appendix 28, ¶ 45b(3)(c). Although PS2 KC testified that she did not recall the appellant penetrating her vagina with his

9

penis, there is little dispute, if any, as to whether the appellant engaged in a sex act with PS2 KC. The evidence adduced at trial, to include the results of the SAFE, revealed the presence of semen in and around PS2 KC's vagina which matched the deoxyribonucleic acid (DNA) of the appellant. The only element in issue is whether PS2 KC was substantially incapacitated.

When PS2 KC arrived home, she had to be assisted by the appellant in getting to her apartment. MA2 S stated that when he saw the appellant and PS2 KC walking up the stairs to their apartment, the appellant was supporting all of PS2 KC's body weight. He further indicated that when PS2 KC came into their apartment, her speech was slurred and her ability to walk and remain coherent was diminishing. The appellant himself expressed concern as to PS2 KC's condition while he was helping MA2 S put her to bed stating that he would stay with PS2 KC while MA2 S went to work in case she got sick again or needed to go to the hospital. PS2 KC described her memory as "hazy" and the feeling like she was in a "dreamlike" state during the sexual assault and only became coherent when she experienced the pain of her underwear being pulled up too high.

The Government also presented evidence that PS2 KC's blood alcohol content (BAC) at 0741 when she provided a blood sample was .143. Through back extrapolation the Government's expert was able to determine that her BAC at 0410, the time of the sexual assault, would have been .195 or slightly above. Record at 679. The expert further opined that at this stage of intoxication the individual would be in a confused state and disoriented. *Id*. at 682.

After thoroughly reviewing all of the evidence, we find that the military judge had a factual basis to find the appellant guilty beyond a reasonable doubt of aggravated sexual assault. Taking into consideration that we did not see the witnesses personally, we find the evidence both legally and factually sufficient to find the appellant guilty beyond a reasonable doubt of the charge and specification of which he was convicted at trial. Accordingly, we find this assignment of error to be without merit.

10

## Conclusion

The finding and the sentence as approved by the CA are affirmed.

Senior Judge MCFARLANE and Judge GERDING concur.

For the Court


R.H. TROIDL
Clerk of Court