# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

### No. ACM 40304 (f rev)

_____

### UNITED STATES
*Appellee*

**v.**

### Jordan P. GOODWATER
Airman (E-2), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 22 November 2024

_____

*Military Judge*: Charles G. Warren (pretrial proceedings);[1] Christina M. Jimenez (arraignment and motions); Michael J. Taber.

*Sentence*: Sentence adjudged 13 April 2022 by GCM convened at Nellis Air Force Base, Nevada. Sentence entered by military judge on 18 May 2022: Bad-conduct discharge, confinement for 32 months, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant*: Major Samantha P. Golseth, USAF.

*For Appellee*: Colonel Matthew D. Talcott, USAF; Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel J. Peter Ferrell, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major Oliva B. Hoff, USAF; Major Jay S. Peer, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, MASON, and KEARLEY, *Appellate Military Judges*.

Judge MASON delivered the opinion of the court, in which Senior Judge RICHARDSON and Judge KEARLEY joined.

_____

[1] Pursuant to Article 30a, UCMJ, 10 U.S.C. § 830a.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4**

―――――――――――――

MASON, Judge:

A general court-martial composed of a military judge found Appellant guilty, in accordance with his pleas, of one specification of possession of child pornography, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[2] Contrary to his pleas, the military judge convicted Appellant of one specification of distribution of child pornography, in violation of Article 134, UCMJ. The military judge sentenced Appellant to a bad-conduct discharge, confinement for 32 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority took no action on the findings or the sentence and denied Appellant's request for deferment in reduction in rank.

After completing an initial review of the record of trial, Appellant's counsel moved us to remand the case because two prosecution exhibits were missing from the record. The Government did not oppose the motion. We granted this motion and remanded the case for correction of the record. *See United States v. Goodwater*, No. ACM 40304, 2023 CCA LEXIS 231, at *1–2 (A.F. Ct. Crim. App. 31 May 2023) (order). The record was subsequently corrected and re-docketed with this court.

Appellant raises four issues on appeal: (1) whether Appellant's conviction for child pornography distribution is legally and factually sufficient; (2) whether two prosecution exhibits were testimonial and introduced into evidence in violation of Appellant's constitutional right to confrontation; (3) whether four prosecution exhibits were admitted without proper foundation, over defense objection; and (4) whether the Government can prove 18 U.S.C. § 922 is constitutional as applied to Appellant and whether this court can decide that question.

After carefully considering issue (4), we find Appellant is not entitled to relief. As we explained in *United States v. Vanzant*, 84 M.J. 671, 681 (A.F. Ct. Crim. App. 2024), *rev. granted*, __ M.J. __, No. 24-0182, 2024 CAAF LEXIS 640, at *1 (17 Oct. 2023) and *United States v. Lepore,* 81 M.J. 759, 763 (A.F. Ct. Crim. App. 2021) (en banc), this court lacks authority to provide the requested relief regarding the 18 U.S.C. § 922 prohibition notation on the staff

―――――――――――――

[2] Unless otherwise noted, all references in this opinion to the UCMJ and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2019 ed.).

judge advocate's indorsement to the entry of judgment or Statement of Trial Results.

We agree with Appellant that one of the prosecution exhibits was erroneously admitted during the findings portion of the trial on the distribution specification (Specification 2 of the Charge) in that it contained testimonial hearsay. This erroneous admission was not harmless beyond a reasonable doubt. Therefore, we set aside Appellant's conviction of this offense in our decretal paragraph below. We need not address the remaining issues raised as they are rendered moot by our reversal of the distribution conviction. The findings of guilty for the possession specification and the charge are without material prejudice to any of Appellant's substantial rights. We affirm the remaining findings of guilty and the sentence, as reassessed.

## I. BACKGROUND

From January 2019 to August 2020, while stationed at and living on Nellis Air Force Base, Appellant possessed approximately 1,700 images and videos of child pornography. He obtained these depictions using a social media platform. Within this platform, a user can participate in virtual communities called servers. A server can be a private chat room or a public chat room as established by the user.

On 24 April 2020, the National Center for Missing and Exploited Children (NCMEC) received a report from the social media platform related to a suspect with a certain username and a certain email address which uploaded child pornography to the social media platform server. After receiving this report, NCMEC representatives generated a "CyberTipline report." This report contained the unaltered information submitted from the reporting individual from the social media platform. The report was forwarded to the Las Vegas Metropolitan Police Department as well as the Air Force Office of Special Investigations (OSI) along with the suspected image of child pornography as submitted by the social media platform.

Working with the Federal Bureau of Investigations (FBI), OSI obtained subpoenas for various telecommunications companies, including an Internet service provider, a cell phone provider, and the social media platform. Each organization returned information in response to their respective subpoenas. The returns indicated that the Internet Protocol (IP) address associated with Appellant's accounts matched the IP address reflected in the CyberTipline report. OSI agents utilized this information to identify and locate Appellant on Nellis Air Force Base.

Appellant was interviewed as part of OSI's investigation. During this interview Appellant admitted that the certain username was his social media

platform username. He admitted that he was in possession of child pornography on his phone. He stated that in April 2020, he "got mad at a [the social media platform] server" because he had been banned from it. In response, he found an image of child pornography and uploaded a link for that child pornography image to that server. He did so by "spamming" the link, meaning copying and pasting the link to the server repeatedly.

OSI agents also conducted searches of Appellant's work center and his dorm room. Pictures were taken in each location. At the work center, agents took a picture of a wooden sign containing a series of letters that matched Appellant's username on the social media platform, In Appellant's dorm room, agents took three pictures of playing cards depicting "anime women in suggestive poses" and a picture of an open webpage depicting different email account information.

The Government called BA, a division director from NCMEC, to testify at trial. Trial counsel sought to admit the NCMEC CyberTipline report and the accompanying image during this testimony. Additionally, trial counsel offered a business record affidavit from the individual who oversaw the NCMEC CyberTipline to establish the foundation for the admission of the report for this case. Trial counsel did not present any testimony from a representative from the social media platform. Trial defense counsel objected to both admission of the report and of the accompanying image, arguing that they contained testimonial hearsay from the social media platform. The military judge overruled the objections and admitted the report and the image.

## II. DISCUSSION

### A. NCMEC CyberTipline Report

#### 1. Law

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004) (footnote omitted).

"[A] statement is testimonial if 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *United States v. Sweeney*, 70 M.J. 296, 301 (C.A.A.F. 2011) (quoting *United States v. Blazier*, 68 M.J. 439, 442 (C.A.A.F. 2010)). "[M]achine-generated data and printouts are not statements and thus not hearsay -- machines are not declarants -- and such data is therefore not 'testimonial.'" *United States v. Blazier*, 69 M.J. 218, 224 (C.A.A.F. 2010)

4

(footnote and citations omitted). Chain of custody documents may also be non-testimonial. *United States v. Tearman*, 72 M.J. 54, 61 n.13 (C.A.A.F. 2013).

"Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009).

"To rank as testimonial, a statement must have a primary purpose of establishing or proving past events potentially relevant to later criminal prosecution." *Bullcoming v. New Mexico*, 564 U.S. 647, 659 n.6 (2011) (internal quotation marks and citations omitted).

When deciding whether a statement is testimonial, we look objectively at the totality of the circumstances and particularly consider three factors to guide this contextual analysis: (1) whether the statement was "elicited by or made in response to law enforcement or prosecutorial inquiry;" (2) whether the statement involved "more than a routine and objective cataloguing of unambiguous factual matters;" and (3) whether "the primary purpose for making or eliciting the statement[ ] was the production of evidence with an eye toward trial." *United States v. Rankin*, 64 M.J. 348, 352 (C.A.A.F. 2007); *see also United States v. Squire*, 72 M.J. 285, 288 (C.A.A.F. 2013) (citations omitted).

"The proponent of the evidence has the burden of demonstrating that the evidence is admissible." *United States v. Finch*, 79 M.J. 389, 394 (C.A.A.F. 2020).

We review a military judge's ruling on the admission or exclusion of evidence for an abuse of discretion. *United States v. Katso*, 74 M.J. 273, 278 (C.A.A.F. 2015) (footnote omitted). Whether a statement is testimonial for purposes of the Sixth Amendment is a question of law we review de novo. *United States v. Baas*, 80 M.J. 114, 120 (C.A.A.F. 2020) (citation omitted).

Where a confrontation clause objection is preserved and we find error, we will grant relief unless the error was harmless beyond a reasonable doubt, considering such factors as: (1) "the importance of the unconfronted testimony in the prosecution's case;" (2) "whether that testimony was cumulative;" (3) "the existence of corroborating evidence;" (4) "the extent of [cross-examination] permitted;" and (5) "the strength of the prosecution's case." *Sweeney*, 70 M.J. at 306 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 683 (1986)).

### 2. Analysis

Appellant alleges error in the military judge's admission of the CyberTipline report and accompanying image. He argues that because an individual

from the social media platform did not testify, his right to confrontation of that individual violated his constitutional rights.

We note that the CyberTipline report is a record of regularly conducted business activity. *See* Mil. R. Evid. 803(6). The Government provided sufficient foundation to establish that the document met this exception to the hearsay rule, in general. Documents kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status. *Melendez-Diaz*, 557 U.S. at 321. But this would not be so if the regularly conducted business activity is the production of evidence for use at trial. *Id.*

Here, the burden was on the Government to establish that the report, in whole or in part, was admissible. In light of the trial defense counsel's objection, trial counsel had the burden to show that the contents of the report were not testimonial. The military judge ruled, "I find that the report, Prosecution Exhibit 1 for identification was created for the administration of NCMEC affairs and not for the purpose of establishing or proving some fact at trial." We find that the military judge erred, and that the Government failed to meet their burden to show that the report was admissible. The report itself reflects, "NCMEC makes information submitted to the CyberTipline and Child Victim Identification Program available to law enforcement . . . ." NCMEC was the initial reporting agency to law enforcement, not the social media platform. The report served as the reporting mechanism to law enforcement which triggered the criminal investigation in this case. In the absence of evidence to the contrary, it is hard to see this report as something other than a consolidation of evidence reported directly to law enforcement for the purpose of proving a past event potentially relevant to later criminal prosecution. *See Bullcoming*, 564 U.S. at 659 n.6.

Furthermore, this report involved more than a routine and objective cataloguing of unambiguous factual matters. Rather, it was a complete echo of statements compiled and submitted by a representative of the social media platform that alleged a criminal act. At a minimum, the following statements in the report were testimonial: (1) "Incident Type: Child Pornography (possession, manufacture, and distribution)" followed by the exact date and time of incident reported; (2) "Suspect" information including an email address and username; and (3) "Were entire contents of uploaded file publicly available? Yes."

Having found that the NCMEC report contained testimonial statements and noting that neither the author of the report generated by the social media platform and sent to NCMEC nor anyone else from the social media platform testified in person at Appellant's trial, we find the military judge abused his discretion in admitting the report.

We must determine whether the admission of this evidence was harmless beyond a reasonable doubt. *Sweeney*, 70 M.J. at 306. The report served as the bedrock of the Government's case against Appellant for distribution of child pornography. No other evidence, including Appellant's interview statements, provided full details of exactly when or what Appellant uploaded. Appellant stated that he uploaded an image and spammed a link to that image; he did not remember what the image looked like. This report reflects that a particular image was uploaded. Moreover, the report indicates that the image uploaded was publicly available, something Appellant's statements do not make clear. While trial defense counsel did have an opportunity to cross-examine BA, her knowledge was limited due to a lack of personal knowledge of the details submitted to NCMEC by the social media platform. No one from the social media platform was present and available to cross-examine.[3] In other words, in many important respects, the Government's case centered on this CyberTipline report and the testimonial contents within.

Compounding the error, trial counsel relied heavily on the report in the findings argument. They compared Appellant's statements to OSI to the report and called it, "perfectly corroborated." As Appellant was deprived of his right to cross-examine the declarant of these testimonial statements, under these circumstances, we cannot conclude that such a deprivation was harmless beyond a reasonable doubt. Accordingly, we set aside Specification 2 of the Charge.

**B. Sentence Reassessment**

**1. Law**

We have broad discretion first to decide whether to reassess a sentence, and then to arrive at a reassessed sentence. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). In deciding whether to reassess a sentence or return a case for a rehearing, we consider the totality of the circumstances including the following factors: (1) "Dramatic changes in the penalty landscape and exposure;" (2) "Whether an appellant chose sentencing by members or a military judge alone;" (3) "Whether the nature of the remaining offenses capture[s] the gravamen of criminal conduct included within the original offenses and . . . whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses;" and (4) "Whether the remaining offenses are of the type that judges of the courts of criminal appeals should have the experience and familiarity with to reliably

---

[3] Even the case agent who testified did not have personal knowledge of important steps of the investigation due to not having personally attended the searches of Appellant's work center or dorm room.

determine what sentence would have been imposed at trial." *Id.* at 15–16 (citations omitted).

If we cannot determine that the sentence would have been at least of a certain magnitude, we must order a rehearing. *United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000).

**2. Analysis**

With respect to Appellant's sentence, we have two options: we may order a rehearing or, if we can, reassess the sentence. We find we are able to reassess the sentence. The military judge's segmented sentence for possession of the approximately 1,700 images and videos of child pornography included two years of confinement, to run consecutively with the confinement imposed for the distribution specification. The remaining portions of the sentence included a bad-conduct discharge, forfeiture of all pay and allowances, and reduction to the grade of E-1. The reversal of the distribution specification could, in some cases, dramatically change the penalty landscape and exposure. This is not the case here. The military judge sentenced Appellant to a confinement term of eight months for the distribution specification. That he viewed this distribution substantially less severe than the possession is understandable. At most, this distribution involved one image that no one may have viewed, while the possession offense involved well over a thousand depictions readily accessible to Appellant. The possession seems to us to be the gravamen of Appellant's criminal conduct. Considering all the matters of record, we are confident that the military judge would have adjudged at least a bad-conduct discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to the grade of E-1 for the possession offense alone. We therefore reassess to that sentence.

## III. CONCLUSION

The finding of guilty for Specification 2 of the Charge is **SET ASIDE AND DISMISSED WITH PREJUDICE**. We reassess the sentence to a bad-conduct discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The findings, as modified, and the sentence, as reassessed, are correct in law and fact, and no additional error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

The findings, as modified, and the sentence, as reassessed, are **AF-FIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court